911 So.2d 851 (2005)
David T. MYERS, Appellant,
v.
HILLSBOROUGH COUNTY SCHOOL BOARD & RSKCO, Appellees.
No. 1D04-1894.
District Court of Appeal of Florida, First District.
September 22, 2005.
*852 Mark G. Capron, Esquire of Smith, Feddeler, Smith & Miles, P.A., Lakeland, Susan W. Fox, Esquire of Fox & Loquasto, P.A., Tampa and Wendy S. Loquasto, Esquire of Fox & Loquasto, Tallahassee, for Appellant.
R.G. McCormick, Jr., Esquire of The Bleakley Law Firm, Tampa, for Appellees.
BENTON, J.
David T. Myers appeals a final order denying, inter alia, his workers' compensation claims for authorization for psychiatric treatment by a Dr. Gonzalez, and for permanent total disability benefits, augmented by supplemental benefits. The final order did award permanent impairment benefits, and temporary total disability benefits for the period from May 12, 1998, through May 21, 1998, followed by temporary partial disability benefits for the period from May 22, 1998, through April 15, 1999, the date Mr. Myers stopped working as a school janitor. We affirm in all respects, except insofar as the final order denied temporary disability benefits for the period immediately after his work as a custodian ended.
Mr. Myers injured his back on May 12, 1998, while working as a school janitor for the Hillsborough County School Board. In subsequently quitting as the school janitor, the judge of compensation claims concluded, Mr. Myers voluntarily limited his income, thereby ending his eligibility for disability benefits. On this affirmative defense, the employer and its servicing agent had the burden of proof. See, e.g., Ben Brown Painting Contractors v. Poole, 667 So.2d 235, 236 (Fla. 1st DCA 1995) ("The employer must show that at least one job opening existed within claimant's . . . limitations."). They did not meet their burden, the ruling below notwithstanding.
Mr. Myers contends that he quit only because his supervisors required him to work outside his medical restrictions, leading to painful, recurrent, medical complications. The employer and its servicing agent did not prove otherwise. Despite his injury and psychiatric sequelae, Mr. Myers returned to work, upon assurances *853 that his job as the school janitor would be modified to accommodate lifting restrictions his physicians had imposed.[1] Ms. Green, a claims representative for the Hillsborough County School Board, testified that her records reflected that the custodial position was modified, after the accident, to include a five-pound lifting restriction.[2]
But the job was not, in fact, modified, according to Mr. Myers, and he continued to be required to lift heavy objects. He testified that he was once directed to load heavy computers onto a truck, after which his back hurt for several days, preventing his working, and that he routinely had to empty trash containers from the cafeteria. He testified that leftover food dumped into a single cafeteria trash bin would often weigh up to sixty or seventy pounds. While on occasion he had help emptying the trash, he testified, more often than not there was no one to assist him.
He also testified that he continued to have back pain when he worked as a custodian; that he told his supervisors that he was continuing to have pain, but that the supervisors did nothing to help with his job duties; and that he often missed work because of the pain. (Ms. Green's testimony supported his testimony that he missed a lot of work after his injury, taking sick and annual leave.) Finally he left the position, he testified, because of "[t]he pain and the problems that [he] was having with [his] back."
Nobody from the school where Mr. Myers worked testified concerning his "modified position," or gave evidence as to what was actually required of him. The only testimony describing the work Mr. Myers performed was his own. His testimony that he was required to perform work that exceeded his lifting restrictions was uncontradicted. No evidence disproved his testimony that he continued to have back pain, continued to seek treatment for his injury, and missed a substantial amount of work due to pain from his injury during this time.
*854 The judge of compensation claims is free to reject even uncontroverted testimony if she does not believe it, see Strickler v. Fla. Power Corp., 667 So.2d 239, 240 (Fla. 1st DCA 1995), but the order under review recites Mr. Myers's testimony without any indication that the judge of compensation claims did not believe him. There was no evidence, moreover, that the custodial position was ever really modified to accommodate his lifting restrictions. The School Board called two employees who had handled insurance claims. They acknowledged that the custodial position should have been modified, and testified that, on paper, the position had been modified. Ms. Green had no first-hand knowledge about what happened during the pertinent period, because she had a different job at the time. Ms. Claywell testified that she never met Mr. Myers, and that she could not remember if she had ever talked to him on the phone. Neither of these witnesses had any knowledge of what his supervisors actually required him to do in the custodial position.
There is, therefore, no competent, substantial evidence to support the conclusion that Mr. Myers voluntarily limited his income when he left the custodial position, nor is there such evidence for any time before he refused work as a security monitor in or after December of 1999. Absent such evidence, Mr. Myers was not ineligible for temporary disability benefits.
Accordingly, we reverse and remand for the award of temporary partial disability benefits from April 16, 1999, until at least December 1, 1999. The order is otherwise affirmed.
DAVIS and VAN NORTWICK, JJ., concur.
NOTES
[1] Without finding precisely what lifting restrictions were placed on Mr. Myers when he returned to work, the judge of compensation claims mentioned and relied on the testimony of several doctors who placed him on lifting restrictions, implicitly finding medical restrictions against "heavy lifting." Dr. Balis, his authorized neurologist, restricted him to light-duty work, when he determined that he reached maximum medical improvement from a physical standpoint as of August 30, 1999, permanently proscribing heavy lifting, prolonged bending, stooping and crawling. Dr. Patterson, independent medical examiner for the School Board and its servicing agent, adopted the same physical maximum medical improvement date, stating that he was to avoid lifting over thirty-five pounds, and to avoid constant bending and lifting. Dr. Martinez, an unauthorized neurologist, restricted him to lifting no more than twenty pounds. The only doctor who released him to work without lifting restrictions in 1998 was Dr. Vega, his initial (authorized) orthopedist. But the judge of compensation claims did not accept Dr. Vega's opinions on this or any other point, rejecting his 0% impairment rating and maximum medical improvement date of October 9, 1998, in favor of a 5-6% impairment rating and a maximum medical improvement date of August 30, 1999.
[2] Ms. Green only testified to what her records reflected; she did not work in this position when Mr. Myers worked as a custodian. Ms. Claywell was the insurance claims representative for the School Board at that time. (She had since retired from the School Board and Ms. Green assumed her position.) Ms. Claywell testified that, although the file did not reflect it, at one point after the accident, the position had a twenty-five pound lifting restriction. Both Ms. Green and Ms. Claywell were insurance claims representatives who testified that the custodial position was supposed to be modified to meet Mr. Myers's lifting restrictions. But neither of them claimed any knowledge of whether the restrictions were actually adhered to.